Missouri Pacific Railroad Company, et al *v*. Foreman.

4-5135

Opinion delivered June 27, 1938.

*R. E. Wiley* and *Richard M. Ryan,* for appellants.

*Farmer Tackett* and *Tom W. Campbell,* for appellee.

DONHAM, J. Bruce Foreman, as administrator of the estate of Robert T. Foreman, deceased, sued the Missouri Pacific Railroad Company and Guy A. Thompson, as trustee of said company, and J. L. Fisk and C. H. Hensley, engineer and fireman, respectively, in the circuit court of Hot Spring county, alleging that Robert T. Foreman was struck by a train while attempting to cross the tracks of the appellants at a public crossing in the city of Malvern on the night of November 1, 1935; that the said Robert T. Foreman was driving a truck and, as he attempted to drive same over the tracks at said crossing, the employees of appellants in charge of the running of appellants' train No. 3, being the said J. L. Fisk, engineer, and the said C. H. Hensley, fireman, negligently ran said train over said crossing without giving reasonable or adequate signals, in fact, without giving any signal by bell or whistle and without keeping a lookout for persons or property upon the tracks of appellants at said crossing. It was further alleged that just north of said crossing there was a large warehouse, two gas storage tanks and an oil tank car, which caused an obstruction and cut off the view of the deceased to the extent that he could not see the train as he approached the tracks from the east, and that both the engineer and fireman were guilty of recklessly running the train over and upon said crossing without keeping a lookout and without warning by bell or whistle, with knowledge that the view at the crossing was obstructed. The said Robert T. Foreman was killed instantly. There is, therefore, no element of pain and suffering involved in the case. Suit was brought for the benefit of the widow and next of kin of the deceased for the sum of $30,000. There was a jury trial of the issues involved, resulting in a verdict for appellee for the benefit of the widow and next of kin of the deceased in the sum of $20,000.

This is the second appeal of this case. The opinion on the first appeal will be found in 194 Ark. 490, 107 S. W. 2d 546. Before the case was tried the first time, a peti-

tion and bond for removal were filed and the case removed to the Federal Court for the Western Division of the Eastern District of Arkansas. Appellee contested the removal; and, upon a hearing on a motion to remand the case, the Federal District Court remanded same. The first trial resulted in a verdict for appellee in the sum of $7,500. Upon an appeal from the judgment based upon said verdict, this court reversed and remanded the cause, because of erroneous argument of counsel for appellee, at the same time holding that there was no other error in the record. The court in its opinion on the first appeal held that the questions of liability of appellants for the death of the deceased and the proper compensation to be awarded for the death were questions which were proper to submit to the jury. This holding of the court on the first appeal becomes the law of the case on this appeal, if the evidence shown by the record on this appeal is the same, or substantially the same, as that shown by the record on the first appeal. The evidence on the question of liability on the second trial, we hold, was substantially the same as that on the first trial. Hence, the former opinion to the effect that appellee had made out a case sufficient to go to the jury is the law of the case on this appeal, and it is binding on the court upon a consideration of the same question. *McDonough* v. *Williams*, 86 Ark. 600, 112 S. W. 164. In said case, Mr. Justice Mc-Culloch, speaking for the court, said: "Learned counsel for appellant argue with much zeal and plausibility that the plaintiff did not make out a case to go to the jury, and that the findings of the jury as to the various essential elements of the alleged cause of action are not supported by evidence. The same question was argued with equal force and confidence when the case was before us on the former appeal, but we decided that there was enough evidence to go to the jury. There is little difference in the evidence in the present record and in that presented on the former appeal, and we must treat the former decision as conclusive of the question."

Again in the case of *McCombs* v. *Moss*, 131 Ark. 509, 199 S. W. 545, opinion by Mr. Justice Hart, this court said: "In *McDonough* v. *Williams*, 86 Ark. 600,

112 S. W. 164, the court held that where, on a former appeal, this court adjudged that a plaintiff made out a case to go to the jury, and the case comes up on a second appeal with the same evidence, the former opinion will be conclusive. Hence the court did not err in submitting the case to the jury."

Where the record on a second appeal is substantially the same as on the former appeal, the holdings of this court on the former appeal become the law of the case. This rule has been followed by this court throughout its history. The following are cases sustaining the rule: *Porter* v. *Doe,* 10 Ark. 186; *Rector* v. *Danley,* 14 Ark. 304; *Vogel* v. *Little Rock,* 55 Ark. 609, 19 S. W. 12; *Rankin* v. *Schofield,* 81 Ark. 440, 98 S. W. 674; *National Surety Co.* v. *Long,* 85 Ark. 158, 107 S. W. 384; *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Hill,* 92 Ark. 484, 123 S. W. 760; *Bowman* v. *State,* 93 Ark. 168, 129 S. W. 80; *Knauff* v. *National Cooperage & Woodenware Co.,* 99 Ark. 137, 137 S. W. 823; *Southwestern Telegraph & Telephone Co.* v. *Danaher,* 102 Ark. 547, 144 S. W. 925; *Williams* v. *Fulkes,* 103 Ark. 196, 146 S. W. 480; *Storthz* v. *Watts,* 125 Ark. 393, 188 S. W. 1166; *Western Union Telegraph Co.* v. *Furlow,* 129 Ark. 116, 195 S. W. 368; *Durfee* v. *Dorr,* 131 Ark. 369, 199 S. W. 376; *Mayo* v. *Arkansas Valley Trust Co.,* 137 Ark. 331, 209 S. W. 276; *Henry Wrape Co.* v. *Barrentine,* 138 Ark. 267, 211 S. W. 366; *Hurst* v. *Cosby,* 154 Ark. 300, 242 S. W. 570; *Missouri Pacific Railroad Co.* v. *Walnut Ridge-Alicia Road Improvement District,* 160 Ark. 297, 254 S. W. 1065; *Indiana Lumbermen's Mut. Ins. Co.* v. *Meyers Stave & Mfg. Co.,* 164 Ark. 359, 261 S. W. 917; *Howard-Sevier Road Improvement District* v. *Hunt,* 166 Ark. 62, 265 S. W. 517; *Gregg* v. *Road Improvement District,* 169 Ark. 671, 277 S. W. 515; *Jeffett* v. *Cook,* 175 Ark. 369, 299 S. W. 389; *Alford* v. *Prince,* 178 Ark. 159, 10 S. W. 2d 10; *Blume* v. *Lightle,* 180 Ark. 136, 20 S. W. 2d 630; *Morris & Co.* v. *Alexander & Co.,* 180 Ark. 735, 22 S. W. 2d 558; *American Railway Express Co.* v. *Cole,* 185 Ark. 532, 48 S. W. 2d 233; *Milsap* v. *Holland,* 186 Ark. 895, 56 S. W. 2d 578; *Postal Telegraph-Cable Co.* v. *White,* 190 Ark. 365, 80

S. W. 2d 633; *Russwurm* v. *Helena,* 191 Ark. 338, 86 S. W. 2d 175; *Missouri Pacific Railroad Co.* v. *Hunnicutt,* 193 Ark. 1128, 104 S. W. 2d 1070; *Missouri Pacific Railroad Co.* v. *Sanders, ante* p. 269, 117 S. W. 2d 720.

Not only does this court hold that the law of the case as announced on the first appeal becomes the law of the case on the second appeal, but practically all the other courts in this country so hold.

We hold that, since the question as to whether or not the evidence was sufficient to go to the jury in the instant case was settled by this court on the former appeal, there was no error committed by the lower court in submitting the case to the jury on the second trial.

After the case was remanded by this court for a new trial, the engineer, J. L. Fisk, who was a party-defendant at the first trial, died; and the appellant, Guy A. Thompson, as trustee for the Missouri Pacific Railroad Company, then filed a second petition for the removal of the cause to the Federal District Court for the Western Division of the Eastern District of Arkansas, alleging that J. L. Fisk and C. H. Hensley, engineer and fireman, respectively, on the train that struck and killed the deceased, were fraudulently joined as parties-defendant without any purpose to prosecute the action in good faith against them; and that the said J. L. Fisk was dead, having departed this life since the first trial of the case.

It was further alleged that said C. H. Hensley was a laboring man and was insolvent and without means or property with which to answer in damages to appellee, and that appellee knew of the insolvent condition of the said Hensley and knew that he could not respond in damages.

The alleged acts of negligence of said Fisk and Hensley were denied in the petition for removal; and it was alleged in the petition that any cause of action which existed against the said J. L. Fisk in his lifetime was barred as to his estate or personal representative.

It was further alleged in said petition for removal that the said C. H. Hensley, as fireman on the train which struck and killed the deceased, was keeping a sharp look-

out along the tracks at the time of the accident and that he did not have control of the bell or whistle of the engine of said train, but that same were under the control of the engineer, J. L. Fisk, and that, therefore, the alleged acts of negligence with reference to a failure to ring the bell or blow the whistle were not properly chargeable to the said C. H. Hensley.

It was further alleged in the petition that when the said C. H. Hensley saw the deceased as he drove upon the tracks, he gave a signal to the engineer, Fisk, to stop the train, but that the engineer was unable to do so in time to avoid striking the deceased.

It was further alleged in the petition for removal that the duty to ring the bell or blow the whistle was one which rested solely, as a matter of law, upon the railroad company. It was further alleged that, under the circumstances existing at the time the second petition for removal was filed, the complaint stated a controversy solely between Guy A. Thompson, as Trustee, and the appellee; that this cause of action was separable and distinct as to petitioner and that same could be justly and properly determined without the presence of the said C. H. Hensley as a party-defendant; that the cause of action, therefore, was between citizens of different states; that the amount in controversy exceeded the sum of $3,000; and that, therefore, petitioner was entitled to have the cause removed to the federal court.

As we view the record, there are several reasons why this petition is not sufficient to remove the cause to the federal court. The sufficiency of the petition for removal presents a question of law for the state court. This question of law must be determined by the court from the face of the record as it existed at the time of the filing of the petition. The court cannot hear evidence to determine questions of fact raised by the petition. For, all questions of fact which can be determined only by the taking of evidence must be tried in the federal court. However, if the petition upon its face, when taken in connection with the other pleadings in the case, fails to meet the legal requirements for a removal of the cause, it is

the duty of the state court to so hold and to proceed with the trial of the case. *Steed* v. *Henry,* 120 Ark. 583, 180 S. W. 508; *Gregory* v. *Hartley,* 113 U. S. 742, 5 S. Ct. 743, 28 L. Ed. 1150; *Madisonville Traction Co.* v. *Saint Benard Mining Co.,* 196 U. S. 239, 25 S. Ct. 251, 49 L. Ed. 462; *Chicago, R. I. & P. Ry. Co.* v. *Dowell,* 229 U. S. 102, 33 S. Ct. 684, 57 L. Ed. 1090; *Chesapeake & Ohio Ry. Co.* v. *Cockrell,* 232 U. S. 146, 34 S. Ct. 278, 58 L. Ed. 544; *Iowa Central Ry. Co.* v. *Bacon,* 236 U. S. 305, 35 S. Ct. 357, 59 L. Ed. 591.

There were two non-resident defendants involved in the suit, they being the Missouri Pacific Railroad Company and Guy A. Thompson, Trustee for the Missouri Pacific Railroad Company. It will be noted that only one of these filed a petition for removal. The Missouri Pacific Railroad Company did not join in the petition of Guy A. Thompson, Trustee. It is necessary for all of the non-resident defendants to join in a petition for removal, in order that removal may be accomplished. *St. Louis, Arkansas & Texas R. Co.* v. *Trigg,* 63 Ark. 536, 40 S. W. 579. The decision of this court in the Trigg case was inferentially approved by the Supreme Court of the United States December 11, 1899, by its dismissal of a writ of error in the case. For approval of the rule, see, *Fordyce* v. *Trigg,* 175 U. S. 723, 44 L. Ed. 337, 20 S. Ct. 1024. See, also, *Texas & Pacific Railway Co.* v. *Cox,* 145 U. S. 593, 12 S. Ct. 905, 36 L. Ed. 829; *Rouse* v. *Hornsby,* 161 U. S. 588, 16 S. Ct. 610, 40 L. Ed. 817; *C., R. I. & P. Ry. Co.* v. *Martin,* 178 U. S. 245, 20 S. Ct. 854, 44 L. Ed. 1055; *Jewett* v. *Whitcomb,* 69 Fed. 417; *Rogers* v. *Van Nortwick,* 45 Fed. 513; *Thompson* v. *Chicago, St. P. & K. C. Ry. Co.,* 60 Fed. 773; *Yarnell* v. *Felton,* 102 Fed. 369; *Yarnell* v. *Felton,* 104 Fed. 161; *State Trust Co.* v. *Kansas City, P. & G. R. Co.,* 110 Fed. 10; *Scott* v. *Choctaw, O. & G. R. Co.,* 112 Fed. 181; *German Savings & Loan Soc.* v. *Dormitzer,* 116 Fed. 471; *Miller* v. *Le Mars Nat. Bank,* 116 Fed. 551; *Abel* v. *Book,* 120 Fed. 47; *Huntington* v. *Pinney,* 126 Fed. 237; *Miller* v. *Clifford,* 133 Fed. 880; *Heffelfinger* v. *Choctaw, O. & G. R. Co.,* 140 Fed. 75; *Blackburn* v. *Blackburn,* 142 Fed. 901; *McNaul* v. *West Indian Securities Corp.,* 178 Fed. 308; *Bowles* v. *H. J.*

*Heinz Co.,* 188 Fed. 937; *Richardson* v. *Southern Idaho Water Power Co.,* 209 Fed. 949; *Casey* v. *Baker,* 212 Fed. 247; *O'Neil* v. *Birdseye,* 244 Fed. 254; *Gjerde* v. *Thelander,* 294 Fed. 292; *McCaffrey* v. *Wilson & Co.,* 10 Fed. 2d 368; *Highway Construction Co.* v. *McClelland,* 14 Fed. 2d 406; *Rupp* v. *Wheeling & L. E. R. Co.,* 121 Fed. 825; *Texas & P. Ry. Co.* v. *Young,* 27 S. W. 145; *Guarantee Co. of North America* v. *First National Bank of Lynchburg,* 95 Va. 480, 28 S. E. 909.

The fact that the engineer, Fisk, had died does not make the case removable. The complaint contained the same allegations of negligence as to the fireman, C. H. Hensley, as to the engineer, Fisk. Both Hensley and Fisk were residents of the state. The case had been removed before the first trial to the federal court and had been remanded by that court. Since the allegations of negligence as to both the fireman and engineer were the same, it is immaterial that the engineer is no longer a party to the suit, it being sufficient that the fireman is still a proper party-defendant. *Burt* v. *Mo. Pac. R. Co.,* 294 Fed. 911; *Locke* v. *St. Louis-San Francisco Ry. Co.,* 87 Fed. 2d 418.

The question of the insolvency of the fireman, C. H. Hensley, is not important. It is quite generally held by both state and federal courts that the fact that a defendant is a man of small means and is unable to respond in damages is wholly immaterial. If one has a cause of action which is joint and he elects to sue all tortfeasors jointly liable, his motive in doing so is of no importance and cannot be questioned. *Chicago, Rock Island & Pacific Ry. Co.* v. *Dowell,* 229 U. S. 102, 33 S. Ct. 684, 57 L. Ed. 1090; *Chicago, Rock Island & Pacific Ry. Co.* v. *Schwyhart,* 227 U. S. 184, 33 S. Ct. 250, 57 L. Ed. 473; *Chicago, Rock Island & Pacific Ry. Co.* v. *Willard,* 220 U. S. 413, 31 S. Ct. 460, 55 L. Ed. 521; *Illinois Central R. Co.* v. *Sheegog,* 215 U. S. 308, 30 S. Ct. 101, 54 L. Ed. 208.

The allegations of the petition were not sufficient to constitute a charge of fraudulent joinder of the fireman, Hensley. He was present on the engine of the train that struck and killed the deceased and was assisting in the

operation of the engine. He was charged with the duty of keeping a lookout. The allegation that the engine was not at the time under the control of the said Hensley does not relieve Hensley of liability for the negligent operation thereof. It was enough to render him liable that he was assisting the engineer in the operation of the engine. Under the circumstances, Hensley was in better position to keep a lookout than was the engineer, Fisk. And it is alleged in the complaint that he negligently failed to keep a lookout. He was in a position to apprise the engineer of the fact that the deceased was driving his truck upon the tracks from the east, this being the fireman's side. Whether he properly discharged this duty was a question of fact to be determined upon a trial of the case..

It is not sufficient to effect removal of a cause for the petitioner to deny the allegations of negligence set out in the complaint and to allege that the resident defendant was fraudulently joined for the purpose of preventing removal. Speaking of such traverse of the allegations of negligence set out in the complaint, the United States Supreme Court in the case of *Chesapeake & Ohio Railway Co.* v. *Cockrell,* 232 U. S. 146, 34 S. Ct. 278, 58 L. Ed. 544, said: "Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet 'fraudulent' will not suffice; the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." Citing, *Wecker* v. *National Enameling & Stamping Co.,* 204 U. S. 176, 27 S. Ct. 184, 51 L. Ed. 430, 9 Ann. Cas. 757; *Illinois Central R. Co.* v. *Sheegog,* 215 U. S. 308, 30 S. Ct. 101, 54 L. Ed. 208; *Chicago, Rock Island & Pacific Ry. Co.* v. *Dowell,* 229 U. S. 102, 33 S. Ct. 684, 57 L. Ed. 1090.

Speaking further of the allegations of negligence on the part of the engineer and fireman in failing to maintain an adequate lookout and in failing to give any warning of the approach of the train, the court in the case of *Chesapeake & Ohio Railway Co.* v. *Cockrell, supra,* said: "With the allegations that they (the engineer and fireman) were operating the train which did the injury

standing unchallenged, the showing amounted to nothing more than a traverse of the charges of negligence, with an added statement that they were false or recklessly made and could not be proved as to the engineer or fireman. As no negligent act or omission personal to the railway company was charged, and its liability, like that of the two employees, was, in effect, predicated upon the alleged negligence of the latter, the showing manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was ill-founded as to all the defendants. Plainly, this was not such a showing as to engender or compel the conclusion that the two employees were wrongfully brought into a controversy which did not concern them. As they admittedly were in charge of the movement of the train, and their negligence was apparently the principal matter in dispute, the plaintiff had the same right, under the laws of Kentucky, to insist upon their presence as real defendants as upon that of the railway company. We conclude, therefore, that the petition for removal was not such as to require the state court to surrender its jurisdiction.''

The Eighth Circuit Court of Appeals, in passing on the question of removal in the case of *Cox* v. *Early et al.,* 65 Fed. 2d 891, this being a case where Early, the engineer in charge of the switch engine, was joined with the Chicago, Rock Island & Pacific Railway Company, Early being a resident of the state and the railway company a nonresident, said: ''Such a controversy as is thus sought to be presented in the petition for removal cannot be tried out by the federal judge in removal proceedings. The federal court has power to eliminate or disregard a sham defendant who has been fraudulently joined to defeat jurisdiction, or recklessly so joined, but the kind of a case in which it may do so is clearly indicated in *Wilson* v. *Republic Iron Co.,* 257 U. S. 92, 42 S. Ct. 35, 66 L. Ed. 144; *Chesapeake & Ohio Ry. Co.* v. *Cockrell,* 232 U. S. 146, 34 S. Ct. 278, 58 L. Ed. 544; and *Wecker* v. *National Enameling & Stamping Co.,* 204 U. S. 176, 27 S. Ct. 184, 51 L. Ed. 430, 9 Ann. Cas. 757. Where it clearly appears that the resident joined as a defendant preventing removal

had nothing to do with the accident sued upon, or no real connection with the tort, and that he has been included in the suit in bad faith or in reckless disregard of the truth and there are facts presented which rightly lead to that conclusion, apart from the pleader's deductions, he may be found to be a sham defendant and disregarded for the purpose of jurisdiction. But when it is admitted, as in this petition for removal, that the resident defendant was the hostler engineer of the company, whose operation of the switch engine brought it into collision with the plaintiff's intestate resulting in the death, and there are no facts to clearly prove fraud in the joinder, there is no way to settle the issue as to whose fault the accident was except upon trial of the case before a jury in the court having jurisdiction."

In *Huffman* v. *Baldwin et al.,* 82 Fed. 2d 5, the United States Circuit Court of Appeals for the Eighth Circuit said: "Even though a plaintiff has misconceived his cause of action and has no right to maintain it against the defendants jointly, that does not change an alleged joint cause of action into a separable controversy for the purpose of removal."

It clearly appears from what we have said that the petition for removal in the instant case was not sufficient to remove it, and we so hold.

During the trial, appellants moved the court to direct the jury to go and view the railroad crossing at which the accident occurred. The court refused to grant the motion and appellants saved exception.

Section 1518 of Pope's Digest of the statutes of Arkansas is as follows: "Whenever, in the opinion of the court, it is proper for the jury to have a view of real property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place."

It will be noted that this section of the statute does not make it obligatory upon the court to order the jury conducted to the scene of an accident; but the court is permitted to make such an order when, in the opinion of the court, it is proper for the jury to have a view of the

scene where the accident occurred. It is seen from the statute that it is within the discretion of the trial court to permit a view of the scene of an accident or to refuse it, the statute simply providing that the court may make such order, but not requiring that such be done in all cases.

In the case of *Missouri Pacific Railroad Co.* v. *Hendrix,* 169 Ark. 825, 277 S. W. 337, a request was made by counsel for an order requiring the jury to view the scene of an accident. In disposing of the question, Chief Justice McCulloch, speaking for this court, said: "There was certainly no abuse of discretion by the court in refusing this request. It is unnecessary for us to decide whether or not it would have been a proper exercise of discretion to permit it to be done. It was certainly unnecessary to do so, and there was no prejudice in the refusal because the equipment had been fully explained and similar equipment had been exhibited to the jury."

In the instant case, appellants introduced a photograph of the crossing made a few days after deceased was killed. This photograph was evidence of the physical facts that existed at the crossing when deceased was killed. Under the circumstances, we cannot say that the trial court abused its discretion when it overruled the motion of appellants for an order requiring the jury to view the crossing where the accident occurred.

It was contended by appellants that the trial court erred in giving appellee's instructions Nos. 1, 4, and 6. All of these instructions were given by the court on the first trial. On reversing the case on the first appeal, this court specifically held that there was no error in the record, except in the argument of one of the attorneys for appellee. The court thereby approved these instructions. Having done so, they constitute a part of the law of the case, which are not subject to review on second appeal.

In the case of *McCombs* v. *Moss,* 131 Ark. 509, 199 S. W. 545, this court said: "Again it is insisted that the court erred in giving the instructions to the jury asked by the plaintiff and in modifying those asked by the defendant. We need not consider these assignments of error in detail. The instructions given by the court in the present

case were the same as those given by the court on the former trial. Instructions on the second trial of an action, which conform to the rules of this court on appeal from the judgment on the first trial, are deemed correct on an appeal from the judgment upon the second trial. *St. L., I. M. & S. R. Co.* v. *Gibson,* 113 Ark. 417, 168 S. W. 1129. The rule that opinions on former appeals are the law of the case on a subsequent appeal is so well settled by numerous decisions of this court that it is hardly necessary to cite any case to support it."

Appellants contend that the trial court erred in refusing to give its requested instruction No. 7-A. This instruction was the same as one requested at the first trial. Its refusal was assigned as error on the former appeal; and this court held that the trial court did not commit error in refusing it.

It is next contended that the trial court erred in refusing appellants' requested instruction No. 8-A. This instruction is identical with an instruction bearing the same number which the court refused on the first trial. Its refusal was assigned as error. This court held on the first appeal that the trial court did not commit error in refusing the instruction.

It is next contended that the trial court committed error in refusing appellants' requested instruction No. 11-A. The requested instruction is as follows: "You are instructed that if you find and believe from a preponderance of the evidence in this case that the whistle was blown or the bell was rung for the crossing or that the headlights were burning on said engine then you are told that the deceased was presumed to have heard said whistle or bell, and that the deceased was deemed to have heard or seen what was plainly to have been heard or seen at the time of attempting to go over the crossing."

The court committed no error in refusing this request of appellants. If this instruction had been given, the jury would have been thereby told that if the whistle was blown, however indistinctly, the deceased must be presumed to have heard it, and that if the bell was rung, even for only a second, the deceased must be presumed

to have heard it, however small the bell might have been and however indistinctly it might have been rung. Such would have been the effect of the instruction, had it been given, even though a number of witnesses swore that they were near the crossing at the time and that their hearing was good and that they neither heard the whistle blown nor the bell rung.

It is contended by appellants that the verdict is excessive. This question has given the court much concern. It is shown by the record that the deceased at the time of his death was fifty-five years of age. He had a life expectancy, according to the American Mortality Tables, of 17.4 years. He was engaged in farming. The evidence shows that his income was from $1,800 to $2,400 per year, 80 per cent. of which, according to the record, he contributed to his wife and children. If it could be said that his average earnings were $2,000 a year and that same would have continued throughout his expectancy and that he would have continued to contribute to his wife and children at the same rate he was contributing at the time of his death, the verdict of $20,000 would not be excessive. However, granting that he would have continued to earn $2,000 per year throughout his expectancy and that he would have continued to contribute to his wife and children at the same rate as at the time of his death, the judgment of $20,000 would be the full amount which the evidence would sustain. This would allow nothing for decrease of earning capacity because of advancing age. At the end of the period of his expectancy the deceased would have been seventy-two years of age. It is not reasonable to suppose that between the ages of fifty-five and seventy-two years his earnings, by reason of his farming operations, would increase but would, because of advancing age, materially decrease. Furthermore, the record shows that while the wife and six children were left as the survivors of deceased, it is shown that three of the children were grown, married and not living at home. There was no evidence to the effect that he was contributing to any of these. The ages of the other three were not shown by the record, except as to the youngest, a girl, twelve years of age. The other

two children living at home were older; and all three would have arrived at legal age before half the life expectancy of the deceased had elapsed. Ordinarily, there is no legal obligation on the part of a parent to contribute to the maintenance and support of his children after they become of age. Again, it is probable that deceased owned his farm. This was a material factor contributing to his earnings. This, of course, was not taken away by his death. There was nothing recovered for conscious pain and suffering, in fact, nothing was asked, since the deceased was killed instantly. Under all the circumstances, the court is of the opinion that the verdict is excessive and should be reduced from $20,000 to $10,000. If the appellee will within fifteen days enter a remittitur of $10,000, the judgment will be affirmed, otherwise the judgment will be reversed, and the cause remanded for a new trial.